IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A.B., a minor,
by his next friend TINA BARBEE,

    Plaintiff,

vs.

CITY OF LIVONIA, a municipal corporation;
MARTHA LANCASTER, a Livonia police
officer, in her individual capacity; and
JOHN DOE, a Livonia police officer, in his
individual capacity,

    Defendants.

Case No.

Hon.

Demand for Jury Trial

_____/

Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
American Civil Liberties Union Fund
  of Michigan
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6824
dkorobkin@aclumich.org
msteinberg@aclumich.org
_____/

## COMPLAINT

Plaintiff A.B., by his mother and next friend, Tina Barbee, brings this complaint for damages and other relief against Defendants City of Livonia, Martha Lancaster, and John Doe for the reasons that follow.

## INTRODUCTION

1. This case is about the fundamental right to be free from unreasonable searches and seizures under the Fourth Amendment.

2. A series of federal and state court decisions over the past decade has firmly established that the Fourth Amendment's warrant requirement applies to breathalyzer tests (sometimes referred to as "preliminary breath tests" or "PBTs") administered to non-motorist minors suspected of having consumed alcohol. A breathalyzer is a search within the meaning of the Fourth Amendment. If a suspect does not consent to a search, the police must get a warrant. The police cannot force a non-motorist minor to blow into a breathalyzer machine simply because someone thinks the minor has been drinking.

3. Unfortunately, some law enforcement agencies and officials continue to disregard this basic Fourth Amendment protection, despite clear guidance from the courts. This case is but one example of a young person who was subjected to a warrantless breathalyzer test in violation of the United States Constitution.

4. A.B., a 13-year-old middle schooler with no history of alcohol abuse or disciplinary problems, was forced to take a breathalyzer test by the Livonia police based on an unfounded accusation that he had been drinking during a school field trip to Rotary Park. He was subjected to this degrading procedure in front of his friends, classmates, and teachers. A.B. had not been drinking, and the breathalyzer test results proved it. But he should not have been subjected to the procedure in the first place. A.B. did not consent to the breathalyzer search, and the police did not get a warrant. No exception to the warrant requirement applied.

5. The Fourth Amendment's warrant requirement is an essential component of civil liberty. Subject to only a few specifically established and well-delineated exceptions, it requires

that the probable cause required for a search be determined by a neutral and detached magistrate, not the police officer engaged in the often competitive enterprise of ferreting out crime.

6. It is to vindicate this important Fourth Amendment principle that Plaintiff brings this lawsuit.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this is a civil action arising under the Constitution and laws of the United States seeking redress for the deprivation, under color of state law, of a right secured by the Constitution of the United States.

8. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claim occurred within the Eastern District of Michigan.

## PARTIES

9. Plaintiff A.B. is a thirteen-year-old minor who resides in Wayne County. He brings this case by his adult mother and next friend, Tina Barbee.

10. Defendant City of Livonia is a municipal corporation located in Wayne County and organized under the laws of the State of Michigan. The Livonia Police Department is a division or department of the City of Livonia.

11. Defendant Martha Lancaster is, or was at all times relevant to this complaint, a police officer employed by the City of Livonia.

12. Defendant John Doe is, or was at all times relevant to this complaint, a police officer employed by the City of Livonia. His true identity is currently unknown to Plaintiff, and Plaintiff intends to amend this complaint to name him as a defendant as soon as his identity is disclosed.

## FACTS

13.  In June 2011, Plaintiff A.B. was a 13-year-old eighth-grader at Discovery Middle School in Canton, Michigan.

14.  A.B. gets good grades, plays sports, and has no disciplinary record or history of alcohol abuse.

15.  On Wednesday, June 15, 2011, A.B. went to Rotary Park in Livonia, Michigan, as part of a school-sponsored picnic and outing to celebrate his class graduating from middle school.

16.  Rotary Park contains hiking trails in the woods, baseball diamonds, picnic areas, and other amenities.

17.  A.B. and four of his friends, also eighth-graders at Discovery, decided to take a walk in the woods before lunch.

18.  A.B. and his friends walked along the hiking trails for about 30 minutes.

19.  When A.B. and his friends exited the woods, they were approached by two teachers who told them that the assistant principal wanted to speak with them and they should wait at a picnic table for him to arrive.

20.  The assistant principal arrived approximately five minutes later.

21.  The assistant principal told A.B. and his friends that he had followed them into the woods.  The assistant principal was carrying an empty liquor bottle and accused A.B. and his friends of drinking from the bottle in the woods.

22.  A.B. and his friends had never seen the bottle before and had not been drinking.

23.  A.B. and his friends told the assistant principal that the bottle did not belong to them and they had not been drinking.

24. The assistant principal was evidently dissatisfied with their response because he called the police.

25. Upon information and belief, the assistant principal did not tell the police that he had personally observed anyone drinking alcohol. He told the police that he had found the bottle in in a wooded area where A.B. and his friends had been congregating.

26. Defendant Martha Lancaster, a Livonia police officer, was the first officer to arrive on the scene.

27. Officer Lancaster questioned A.B. and his friends about the empty liquor bottle.

28. Officer Lancaster demanded to know whom the bottle belonged to and who was drinking.

29. A.B. and his friends told Officer Lancaster that the bottle was not theirs and they had not been drinking.

30. Officer Lancaster told A.B. and his friends that they were lying.

31. Officer Lancaster told A.B. and his friends that another police officer was going to bring a breathalyzer machine to test each of them for alcohol content.

32. Officer Lancaster called for Officer John Doe, another Livonia police officer, to report to the scene with a breathalyzer machine.

33. Officer Doe arrived with the breathalyzer machine after a short wait.

34. Officer Doe instructed A.B. and his friends to place their mouths on the opening to the breathalyzer machine, blow into the machine for about ten seconds, and keep blowing even if they felt resistance.

35. Officer Doe warned A.B. and his friends that if they did not blow into the machine correctly they would have to do it again.

36. A.B. and his friends complied with Officer Doe's instructions and blew into the breathalyzer machine.

37. Officer Doe told A.B. he had not blown into the machine correctly and told him to do it again.

38. Many of A.B.'s friends, classmates, and teachers watched while A.B. and the other students from his group were subjected to the procedure.

39. A.B. felt embarrassed and violated because he had done nothing wrong but was being publicly shamed and forced to prove his innocence by blowing into a machine at the insistence of the police.

40. Neither Officer Lancaster nor Officer Doe made any attempt to ask for A.B.'s consent before administering the breathalyzer test.

41. A.B. did not consent to the breathalyzer test.

42. No one called A.B.'s parents to ask for their permission to administer the breathalyzer test to their son.

43. Neither Officer Lancaster nor Officer Doe procured a search warrant authorizing them to administer the breathalyzer test without A.B.'s consent.

44. Other than what the assistant principal told them, neither Officer Lancaster nor Officer Doe had any evidence that A.B. or his friends had been drinking.

45. The breathalyzer test yielded no positive results.  A.B. and his friends all registered zero alcohol content.

46. After being exonerated by the breathalyzer machine, A.B. and his friends were permitted to re-join their classmates for the rest of the day.  They had missed most of the picnic lunch.

47. As a result of this incident, A.B.'s name is now in at least one police database that is shared by multiple law enforcement agencies in southeastern Michigan.

48. A.B. may face more intense scrutiny by police officers in the future because the electronic records to which they have access indicate that he has had a police encounter in the past.

49. If the police had responded properly to the assistant principal's call, they would have told him that without probable cause they could not obtain a warrant, and without a warrant they could not administer a breathalyzer test.

50. In 2003, this Court declared unconstitutional a Bay City, Michigan ordinance that authorized police officers to force non-motorist minors to submit to warrantless breathalyzer tests based upon reasonable cause to believe they had consumed alcoholic liquor. *See Spencer v. Bay City*, 292 F. Supp. 2d 932 (E.D. Mich. 2003).

51. Following the 2003 decision, attorneys from the American Civil Liberties Union of Michigan ("ACLU") wrote a letter to 425 city, village, and university attorneys, including Livonia's, asking that their respective police agencies adopt new policies to conform to this Court's ruling.

52. In 2007, this Court declared unconstitutional a Michigan statute that was nearly identical to the Bay City ordinance. *See Platte v. Thomas Twp*., 504 F. Supp. 2d 227 (E.D. Mich. 2007).

53. Following the 2007 decision, several Michigan law enforcement agencies entered into consent judgments prohibiting them from requiring non-motorist minors to submit to warrantless breathalyzer tests.

54. In 2009, the Michigan Court of Appeals agreed with this Court and ruled in a unanimous published decision that the Michigan statute was unconstitutional. *See People v. Chowdhury*, 285 Mich. App. 509 (2009).

55. Despite three separate court rulings, an absence of any case law to the contrary, consent judgments involving multiple police forces, and the ACLU's letter to municipalities all over the state (including Livonia), Officers Lancaster and Doe subjected A.B. and four other non-motorist minors to a breathalyzer test without their consent and without a warrant.

56. A public record entitled "Livonia Division of Police — Youth Policy and Procedure" was recently disclosed to Plaintiff's counsel.

57. That document states: "A peace officer, who has reasonable cause to believe a minor has consumed alcoholic liquor, may require a minor to submit to a [breathalyzer test]. A minor who refuses a reasonable request for a [breathalyzer test] may be issued a civil infraction."

58. Upon information and belief, "Livonia Division of Police — Youth Policy and Procedure" as set forth above has not been rescinded or superseded.

## CAUSE OF ACTION

## VIOLATIONS OF THE FOURTH AMENDMENT AND 42 U.S.C. § 1983

59. Under 42 U.S.C. § 1983, every person acting under color of state law who deprives another person of his or her constitutional rights, or causes such a deprivation, is liable at law and in equity.

60. At all times relevant to this complaint, Defendants acted under color of state law.

61. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. The Fourth Amendment is incorporated against the States by the Fourteenth Amendment to the United States Constitution.

62. A breathalyzer test is a search within the meaning of the Fourth Amendment.

63. Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.

64. Defendants Lancaster and Doe violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures when they subjected him to a breathalyzer test because they did not first procure a warrant and no exception to the warrant requirement applied.

65. Defendants Lancaster and Doe violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures when they subjected him to a breathalyzer test because they did not have probable cause to believe he had consumed alcoholic liquor.

66. Under 42 U.S.C. § 1983, municipal defendants are "persons" liable for their unconstitutional practices, customs, and policies.

67. Defendant City of Livonia's practice, custom, or policy allowed or authorized police officers to administer breathalyzer tests to minors without a warrant when no exception to the warrant requirement applied.

68. Defendant City of Livonia failed to train its officers not to administer breathalyzer tests to minors without a warrant when no exception to the warrant requirement applied.

69. Defendant City of Livonia is liable for the deprivation of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures because its practice, custom, policy or failure to train were a moving force behind the deprivation.

## RELIEF REQUESTED

Plaintiff requests that this Court:

    a. assert jurisdiction over this matter;

b. declare that Defendants violated Plaintiff's rights under the Fourth Amendment to the United States Constitution;

c. award Plaintiff nominal, compensatory, and/or punitive damages;

d. order that Plaintiff's name be expunged from all law enforcement records, including electronic records, created as a result of the events described in this complaint;

e. award Plaintiff costs and a reasonable attorney's fee under 42 U.S.C. § 1988; and

f. grant any other relief the Court deems appropriate.

Respectfully submitted,

/s/ Daniel S. Korobkin
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
American Civil Liberties Union Fund
  of Michigan
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6824
dkorobkin@aclumich.org
msteinberg@aclumich.org

Dated: September 20, 2011

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

/s/ Daniel S. Korobkin
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
American Civil Liberties Union Fund
  of Michigan
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6824
dkorobkin@aclumich.org
msteinberg@aclumich.org

Dated: September 20, 2011